UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CLAIRE DEES,

   Appellant,

  v.

NEW REZ LLC d/b/a SHELLPOINT
MORTGAGE SERVICING as servicer
for THE BANK OF NEW YORK
MELLON f/k/a THE BANK OF NEW
YORK as trustee for THE CWALT,
INC., ALTERNATIVE LOAN
TRUST 2005-51M MORTGAGE
PASS THROUGH CERTIFICATES,
SERIES 2005-51,

   Appellee.

CIVIL ACTION NO.
1:21-CV-3475-JPB

## <u>ORDER</u>

  This matter comes before the Court on Claire Dees' ("Appellant")

Bankruptcy Appeal.  Also before the Court are New Rez, LLC's ("Appellee")

Motion for Sanctions [Doc. 6] and Amended Motion for Sanctions [Doc. 7], as

well as Appellant's Countermotion for Sanctions [Doc. 13]; Countermotion for

Offer of Final Settlement, Raising of Federal Questions and Notice of Offer of

Conditional Acceptance and for Deprivation of Rights Under Color of Law [Doc.

16]; Motion for Enlargement of Time [Doc. 18]; and Motion to Vacate, Set Aside

Prior Orders of the Court for Improper Party [Doc. 21].  This Court finds as follows:

## I.       BACKGROUND AND PROCEDURAL HISTORY

The Court notes at the outset that this case represents the fourteenth bankruptcy proceeding filed by Appellant and her husband (who is not a party in this proceeding) within the past nine years, and the instant appeal is the second one filed in the current bankruptcy matter.

On May 23, 2019, Appellant filed a Voluntary Petition for Individuals Filing for Bankruptcy ("Petition") in the Bankruptcy Court for the Northern District of Florida ("Florida Bankruptcy Court").  [Doc. 8-1].  Appellee, who asserted that it was the servicer for Bank of New York Mellon, filed a Motion for Prospective Relief from Automatic Stay ("Motion for Prospective Relief") on July 5, 2019.[1]

---

[1] Ordinarily, filing a voluntary bankruptcy petition triggers an automatic stay that protects a debtor "against actions to enforce, collect, assess or recover claims against the debtor or against property of the estate."  United States v. White, 466 F.3d 1241, 1244 (11th Cir. 2006).  Under certain circumstances, however, a bankruptcy court may grant relief from the automatic stay upon the request of a "party in interest."  11 U.S.C. § 362(d). Specifically, the bankruptcy court shall grant relief from a stay

> if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—(A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or (B) multiple bankruptcy filings affecting such real property.

Id. § 362(d)(4).

[Doc. 8-16, p. 1].  On January 8, 2020, prior to ruling on the Motion for Prospective Relief, the Florida Bankruptcy Court transferred the Petition to the Bankruptcy Court for the Northern District of Georgia ("Georgia Bankruptcy Court").[2]  [Doc. 9-42, p. 1].

On November 20, 2019, the Georgia Bankruptcy Court held an evidentiary hearing on the Motion for Prospective Relief.  [Doc. 10-20].  The Georgia Bankruptcy Court found that Appellant filed a lengthy series of bankruptcy cases for the purpose of delay and granted Appellee's motion on December 5, 2019.  [Doc. 10-16, p. 2].  Appellant appealed that order to this Court on December 10, 2019.  [Doc. 10-18].

This Court issued an order on the appeal on March 3, 2021.  [Doc. 10-23].  In that order, the Court found that "the Georgia Bankruptcy Court was well within its discretion to decide that Appellant's fourteen bankruptcy filings within the past

---

[2] In the transfer order, the Florida Bankruptcy Court noted that the Petition was "an obvious attempt at forum shopping that will not be tolerated by this [c]ourt."  [Doc. 9-47, p. 15].  It also meticulously detailed Appellant's previous bankruptcy filings.  Specifically, the Florida Bankruptcy Court noted that Appellant and her husband had filed a total of fourteen bankruptcy cases, each for the purported purpose of pursuing a refund for what Appellant argued is an invalid debt (the mortgage on her home)—the same debt that Appellee services.  Id. at 2.  Of the fourteen cases, all but two were dismissed because Appellant failed to file the required schedules, file a Chapter 13 bankruptcy plan or make any plan payments.  Id. at 2–7.  Even in Appellant's most recent bankruptcy filing, she waited almost four months after the case commenced to file any schedules or a bankruptcy plan.  Id. at 9.

nine years evidenced an intent to delay and hinder any attempts to enforce the security interest on her home." Id. at 6.  However, the Court determined that Appellee's single allegation identifying itself as the servicer for Bank of New York Mellon was insufficient to establish standing.  Id. at 8.  The Court thus concluded that the Georgia Bankruptcy Court erred by assuming that Appellee had standing for the Motion for Prospective Relief and reversed and remanded for resolution of the standing issue alone.  Id. at 9 ("On remand, Appellee need only show that it is a representative of the Bank of New York Mellon or the loan servicer—nothing more.").

On June 9, 2021, the Georgia Bankruptcy Court held a hearing to consider the question of Appellee's standing.  [Doc. 10-43].  Appellee provided an affidavit from one of its employees, who stated that Appellee services the loan at issue on behalf of the Bank of New York Mellon.  [Doc. 1-2, p. 6].  Included with the affidavit were an Adjustable Rate Note, Security Deed, Assignment of Deed to the Investor and Limited Power of Attorney.  Id.; see [Doc. 10-31].

In an August 12, 2021 order, the Georgia Bankruptcy Court concluded that Appellee provided sufficient documentation to support its allegation that it serviced the loan and that Appellee was thus "a party in interest with standing to

seek relief under [11 U.S.C.] § 362(d)."[3]  [Doc. 1-2, p. 8]; see also id. at 12

("[Appellee] has produced documents that . . . establish on their face that it is the

servicer of the loan.").  Consequently, the court again granted the Motion for

Prospective Relief.

On August 24, 2021, Appellant appealed the Georgia Bankruptcy Court's

ruling.  [Doc. 1].  Appellee filed a Motion for Sanctions and Attorney's Fees and

Costs as Damages for Appellant's Frivolous Appeal on September 20, 2021, [Doc.

6], then amended the motion that same day ("Motion for Sanctions"), [Doc. 7].

Appellant filed a Countermotion for Sanctions on October 4, 2021, [Doc. 13]; a

Countermotion for Offer of Final Settlement, Raising of Federal Questions and

Notice of Offer of Conditional Acceptance and for Deprivation of Rights Under

Color of Law ("Countermotion for Offer of Final Settlement") on October 27,

2021, [Doc. 16]; a Motion for Enlargement of Time ("Motion for Extension") on

---

[3] The Georgia Bankruptcy Court also noted that the standard for seeking relief under § 362(d) is "far less rigorous," requiring the party to have a merely "colorable claim" to relief.  [Doc. 1-2, p. 8].  This more relaxed standard reflects the "summary" and limited nature of a hearing on a motion for relief from stay.  See id. at 12 (citing Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 33–34 (1st Cir. 1994)); see also Strickland v. Wells Fargo Bank, No. 5:14-CV-186, 2014 WL 7003772, at *2 (M.D. Ga. Dec. 10, 2014) ("The effect of the bankruptcy court's order for relief from stay does not equate to a final decision on the merits of a discrete issue, but merely grants the *right* to assert a claim in another court." (quoting In re Richards, No. 09-69716, 2012 WL 2357672, at *3 (Bankr. N.D. Ga. June 8, 2012))).

October 27, 2021, [Doc. 18]; and a Motion to Vacate, Set Aside Prior Orders of the Court for Improper Party ("Motion to Vacate") on November 19, 2021, [Doc. 21]. Below, the Court addresses in turn Appellant's bankruptcy appeal, Appellee's Motion for Sanctions and the remaining motions.

## II.  BANKRUPTCY APPEAL

**A.  Legal Standard**

When reviewing bankruptcy proceedings, the district court functions as an appellate court.  In re Walker, 515 F.3d 1204, 1210 (11th Cir. 2008).  As such, the Court reviews conclusions of law *de novo* and findings of fact for clear error.  See In re Club Assocs., 951 F.2d 1223, 1228–29 (11th Cir. 1992).  Importantly, the decision to lift an automatic stay is "discretionary with the bankruptcy judge[] and may be reversed only upon a showing of abuse of discretion."  In re Dixie Broad., Inc., 871 F.2d 1023, 1026 (11th Cir. 1989).  An abuse of discretion occurs if the bankruptcy judge applies an incorrect legal standard, fails to follow proper procedures or makes clearly erroneous findings of fact.  See In re Hillsborough Holdings Corp., 127 F.3d 1398, 1401 (11th Cir. 1997).

This Court remanded Appellant's first appeal to the Georgia Bankruptcy Court for the limited purpose of determining whether Appellee had standing to bring the Motion for Prospective Relief.  [Doc. 10-23, p. 9].  The Georgia

Bankruptcy Court concluded that Appellee did have standing and granted Appellee's motion.  For purposes of the instant appeal, the Court thus applies *de novo* review to the legal question of standing.  See In re HRN Grp., LLC, No. 1:19-CV-5011, 2020 WL 6712238, at *5 (N.D. Ga. Nov. 13, 2020) (applying *de novo* review to the question of a party's standing as a "party in interest" in a bankruptcy proceeding).

**B.    Analysis**

Appellant raises five issues on appeal.[4]  Three of the five issues are the identical arguments that Appellant raised in her December 10, 2019 appeal.  The Court considered and rejected those contentions in the March 3, 2021 order.  See [Doc. 10-23, pp. 5–6].  Consequently, the Court will not consider them now.  In the remaining two arguments, Appellant claims that the Georgia Bankruptcy Court erred by granting the Motion for Prospective Relief because (1) Appellee's name as styled in this case is "substantially different" from the name used in prior correspondence with Appellant, and (2) the Adjustable Rate Note is unenforceable under Georgia law.  See [Doc. 10-45, p. 3].

---

[4] Appellant erroneously filed her appellate brief on the docket for the Georgia Bankruptcy Court.  See [Doc. 10-45].

Appellant did not raise the first issue before the Georgia Bankruptcy Court.[5] Ordinarily, "an appellate court will not consider a legal issue or theory raised for the first time on appeal." United States v. S. Fabricating Co., 764 F.2d 780, 781 (11th Cir. 1985); see also, e.g., Sundale, Ltd. v. Ocean Bank, 441 B.R. 384, 387 (S.D. Fla. 2010) (applying "the general rule that appellate courts will not consider an issue raised for the first time on appeal" in the context of a bankruptcy appeal to the district court). Nonetheless, the Court will briefly address Appellant's argument on this point.

Appellant claims that Appellee's name on the docket in this case is "substantially different" from how that name appeared in prior correspondence. [Doc. 10-45, p. 12]. Specifically, Appellant points to a letter from Appellee to her husband that references an "account serviced by Shellpoint Mortgage Servicing on behalf of BANK OF NY as trustee for CWALT 05-51 OR." Id. at 27. Appellant seems to argue that this designation is so different from the name of Appellee in this case that Appellee's "true identity" is in doubt. Id. at 12. Appellant cites no

---

[5] During the June 9, 2021 hearing before the Georgia Bankruptcy Court, Appellant primarily challenged the authenticity of the documents attached to the affidavit, focusing on the presence of a vertical line on the enclosed documents. [Doc. 10-43, pp. 9–10, 22–23]. The affiant testified repeatedly that the vertical line resulted from a copy machine and that, for example, the Adjustable Rate Note "has not been altered." Id. at 23. The Georgia Bankruptcy Court agreed with this conclusion. Id. at 34.

legal authority for this position.  That aside, this argument is frivolous and without merit.  Both this case and the document referenced by Appellant identify the loan servicer as "Shellpoint Mortgage Servicing" and convey that Shellpoint Mortgage Servicing is the servicer for the Bank of New York and the trustee for CWALT. Appellant has given this Court no reason to think that a minor discrepancy between Appellee's full name used in legal proceedings and the name it uses when communicating with accountholders calls into question Appellee's standing in this matter.

Appellant did question the enforceability of the Adjustable Rate Note before the Georgia Bankruptcy Court, which is the second basis for her appeal.  However, that court explained—more than once—that the note's enforceability was not at issue.  See, e.g., [Doc. 10-43, p. 33] ("The question here is not whether there is a valid note.  If this note is not valid, that's an issue for the State Courts to determine."); see also infra note 8.  Appellant did not explain why the enforceability of the Adjustable Rate Note is properly in question now, and this Court does not believe it is.  Appellant thus failed to present any viable grounds for appeal.  As such, the appeal is **DENIED**, and the Georgia Bankruptcy Court's August 12, 2021 order is **AFFIRMED**.

### III.      MOTION FOR SANCTIONS

**A.    Legal Standard**

Under Federal Rule of Bankruptcy Procedure 8020, a district court may award sanctions for a frivolous appeal "after a separately filed motion . . . and reasonable opportunity to respond."  Fed. R. Bankr. P. 8020.  Rule 8020 is "the bankruptcy equivalent of Rule 38 of the Federal Rules of Appellate Procedure."  In re Creative Desperation Inc., 443 F. App'x 399, 401 (11th Cir. 2011); see also Fed. R. Bankr. P. 8020 advisory committee's note to 1997 amendment ("[T]his rule recognizes that the authority to award damages and costs in connection with frivolous appeals is the same for district courts sitting as appellate courts, bankruptcy appellate panels, and courts of appeals.").  Because Rule 8020 follows the language of Rule 38,[6] "courts apply cases interpreting Rule 38 in determining whether to grant sanctions under Rule 8020."  West v. Chrisman, 518 B.R. 655, 667 (M.D. Fla. 2014).

Sanctions are appropriate under Rule 38 "'when a party ignored the governing law and relied on clearly frivolous arguments.'"  In re Wizenberg, 838

---

[6] Rule 38 of the Federal Rules of Appellate Procedure provides as follows:  "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee."  Fed. R. App. P. 38.

F. App'x 406, 415 (11th Cir. 2020) (quoting <u>Jackson v. Bank of Am., N.A.</u>, 898 F.3d 1348, 1359 (11th Cir. 2018)).  To determine whether an appeal is so "utterly devoid of merit" as to warrant sanctions, courts consider whether the appellant exhibited bad faith and "whether appellant's argument:  addresses the issues on appeal properly; fails to support the issues on appeal; fails to cite any authority; cites inapplicable authority; makes unsubstantiated factual assertions; makes bare legal conclusions; or[] misrepresents the record." <u>West</u>, 518 B.R. at 667 (citations omitted).

This case presents the additional question of imposing sanctions on a *pro se* litigant.  As a threshold matter, *pro se* parties are subject to procedural rules, "including sanctions for misconduct and for failure to comply with court orders." <u>Maus v. Ennis</u>, 513 F. App'x 872, 878 (11th Cir. 2013).  In the context of Rule 38, courts are generally "reluctant to impose . . . sanctions on *pro se* appellants" but have found such sanctions "warranted in cases when a *pro se* appellant has been already warned that the suit is frivolous."  <u>In re Smith</u>, 849 F. App'x 867, 872 (11th Cir. 2021); <u>see also</u> <u>Bufkin v. Scottrade, Inc.</u>, 812 F. App'x 838, 847 (11th Cir. 2020) (noting that the Eleventh Circuit Court of Appeals has "imposed sanctions on *pro se* appellants who had been explicitly warned that their claims were frivolous").  Prior to awarding sanctions, courts thus consider whether the *pro*

*se* litigant was "put on sufficient notice that the arguments raised in [the] appeal are frivolous and utterly without merit." In re Smith, 849 F. App'x at 873.

## B.   Analysis

Appellee argues that the instant appeal is frivolous because Appellant's claims are "utterly devoid of merit" and "unsupported by law" and because she "fail[ed] to cite to any controlling authority to support her arguments." [Doc. 7, p. 1]. Appellant asserts that she filed her appeal in good faith and "to the best of her ability" as a *pro se* litigant. [Doc. 13, pp. 1–2].[7] She contends that Appellee's frivolity argument "is a legal conclusion unsupported by the facts and the record in this case." Id. at 2. The Court considers the questions of frivolity and notice below.

### 1.   *Whether the Appeal Is Frivolous*

As explained above, Appellant raised five issues in the appeal. This Court considered and rejected three of those issues in Appellant's first appeal, and

---

[7] Appellant filed multiple responses to the Motion for Sanctions. The Motion was filed on September 20, 2021, and thus Appellant's response was due no later than October 4, 2021. See N.D. Ga. Civ. R. 7.1(B) (providing fourteen days for filing a response). The Court thus refers only to Appellee's timely response, [Doc. 13], and disregards the late-filed responses, [Doc. 15]; [Doc. 19]; see also N.D. Ga. Civ. R. 7.1(F) (recognizing the Court's discretion to decline to consider any motion or brief that fails to comply with the Local Rules). Finally, Appellee's response appears to have been filed in duplicate. See [Doc. 12]; [Doc. 13]. The Court refers to [Doc. 13] herein.

accordingly, the Court declines to address these arguments in any detail in this Order.  That aside, because the Court previously addressed these contentions, they were hardly "legitimate issue[s] to pursue" for a second time on appeal.  In re Desmarais, No. 12-80426, 2012 WL 3779021, at *5 (S.D. Fla. Aug. 31, 2012).  Moreover, the Eleventh Circuit has found that "assert[ing] arguments that have already been flatly rejected by the bankruptcy court, the district court, and by [the Eleventh Circuit]" is grounds for Rule 38 sanctions.  In re Smith, 829 F. App'x at 872.

Appellant's remaining bases for appeal do not fare any better.  She did not cite any legal authority to support the proposition that a minor variation in Appellee's name comports any legal significance.  See West, 518 B.R. at 667 (observing that failing to support issues on appeal with citations to legal authority or relying on "bare legal conclusions" indicates frivolity).  Although Appellant cites legal authority for her argument about the enforceability of the Adjustable Rate Note, her sources are neither relevant nor binding on this Court.  She generally references the Uniform Commercial Code—without any citation to specific provisions—and otherwise relies on a case from the Bankruptcy Court of the District of New Jersey.  See [Doc. 10-45, p. 13–14] (citing In re Kemp, 440 B.R. 624 (Bankr. D.N.J. 2010)).  Moreover, the Georgia Bankruptcy Court

*repeatedly* informed Appellant that the enforceability of the Adjustable Rate Note was not at issue.[8]  Nonetheless, Appellant still questioned the enforceability of the Adjustable Rate Note on appeal.  By doing so, Appellant "ignored the governing law" and advanced an argument that was "clearly frivolous."  Jackson, 898 F.3d at 1359 (quoting United States v. Single Fam. Residence & Real Prop., 803 F.2d 625, 632 (11th Cir. 1986)).

Finally, and importantly, the history of Appellant's filings in this case and in thirteen prior bankruptcy proceedings is strong evidence that Appellant filed the instant appeal in bad faith.  The Florida Bankruptcy Court, the Georgia Bankruptcy Court and this Court each concluded that Appellant's prolific filings evinced an intent to delay and to forestall any attempts to foreclose the security interest in her home.  This appeal is merely a continuation of that scheme to delay.  See Steffen v.

---

[8] The Georgia Bankruptcy Court clarified this point multiple times during the evidentiary hearing on Appellee's standing.  See [Doc. 10-43, p. 10] ("[Whether documents attached to the affidavit were altered] may make a difference in whether the [Adjustable Rate Note] is enforceable, but that is not the question before [the court]."); id. at 33 ("The question here is not whether there is a valid note.  If the note is not valid, that's an issue for the State Courts to determine."); id. at 33–34 (observing that it was "clear from the remand order that the question is does [Appellee] have the right to enforce or to attempt to enforce the note" and "[n]ot whether the note is valid"); id. at 34 ("State Courts can deal with [the issue of enforceability").  The Georgia Bankruptcy Court reiterated this point in the written order that is presently on appeal.  See [Doc. 1, p. 18] ("To the extent, if any, that [Appellant and her husband] have any legitimate basis to dispute the debt, the security deed, or [Appellee's] right to service them, the grant of stay relief does not affect their ability to do so in a nonbankruptcy court of competent jurisdiction.").

Berman, No. 8:09-CV-1953, 2010 WL 2293235, at *1 (M.D. Fla. June 7, 2010)

("An award of sanctions is justified if there is 'some indication of the appellant's

bad faith suggesting that the appeal was prosecuted . . . for purposes of delay or

harassment or out of sheer obstinacy.'" (quoting Henry v. Farmer City State Bank,

808 F.2d 1228, 1241 (7th Cir. 1986))).  Based on the foregoing, the Court

concludes that the instant appeal is frivolous.

       2.    *Whether Appellant Received Sufficient Notice*

 Certain "special circumstances" may justify imposing sanctions on a *pro se*

appellant, such as whether they "were explicitly warned by the [lower] court that

their claims were frivolous."  Campbell v. Advanced Core Concepts LLC, No. 21-

13182, 2022 WL 841581, at *4 (11th Cir. Mar. 22, 2022).  This Court finds that

Appellant received sufficient warning as to the frivolity of her arguments to

warrant the imposition of sanctions.  First, the Georgia Bankruptcy Court informed

Appellant—multiple times—that the enforceability of the Adjustable Rate Note

was not at issue.  See supra note 8.  Despite several warnings, Appellant raised that

matter on appeal.  Second, the Georgia Bankruptcy Court expressly warned

Appellant that her repeated filings might warrant sanctions:

> These circumstances not only compel the conclusion that [Appellant
> and her husband] have failed to raise a genuine evidentiary question
> with regard to standing, but also beg the question of whether their
> conduct is sanctionable.  The [c]ourt cannot imagine that a competent,

> ethical attorney would dare to proceed in these repeated cases as
> [Appellant and her husband] have.

[Doc. 1-2, p. 13].  Nonetheless, Appellant filed a frivolous appeal.  The record

before the Court establishes that sanctions are appropriate in this case.

Consequently, the Motion for Sanctions is **GRANTED**.

## IV.   OTHER MOTIONS

The Court will now review the remaining motions filed by Appellant:

Countermotion for Sanctions, Countermotion for Offer of Final Settlement, Motion

for Extension and Motion to Vacate.[9]

Appellant filed a response to the Motion for Sanctions titled "Response and

Objection to Appellee's Amended Motion for Sanctions and Attorney's Fees and

Costs as Damages and Countermotion for Sanctions."  [Doc. 13].  Despite being

named a "Countermotion for Sanctions," that filing does not include any argument

about imposing sanctions on Appellee.  To the extent that Appellant moved this

Court to impose any such sanctions, the Countermotion for Sanctions is **DENIED**.

---

[9] The Court notes that its analysis as to all of these motions is limited to the arguments
and issued presented by Appellant that are at least nominally relevant to these
proceedings.  For example, Appellant claims in the Countermotion for Sanctions that her
deeply held religious beliefs compel her to "fight for her house" and that her right to do
so is protected by the Free Exercise Clause of the First Amendment to the United States
Constitution.  See [Doc. 13, p. 2].  This argument does not respond to any of the issues
raised by Appellee's Motion for Sanctions and is clearly frivolous.  The Court does not
address this claim, or others like it, in any additional detail.

Appellant then filed a Countermotion for Offer of Final Settlement.  [Doc. 16].  In that motion, Appellant purports to bring a counterclaim for damages under 18 U.S.C. § 242.[10]  Id. at 1.  Section 242 is a criminal statute permitting fines or imprisonment for anyone who, "under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States."  18 U.S.C. § 242.  However, this statute does not provide a private right of action.  See Hoffman v. Off. of State Att'y, Fourth Jud. Cir., 793 F. App'x 945, 948 n.1 (11th Cir. 2019) (confirming that § 242 "[is] criminal in nature and provide[s] no civil remedies" (quoting Hanna v. Home Ins. Co., 282 F.2d 298, 303 (5th Cir. 1960))).  Accordingly, the Countermotion for Offer of Final Settlement is **DENIED**.

Appellant filed a Motion for Extension seeking additional time to file a reply brief in her appeal.  [Doc. 18].  Appellant claims that she and her husband "are laboring under a disability" and requests an extension of time pursuant to the Americans with Disabilities Act.  Id. at 1.  Appellant ultimately filed an untimely

---

[10] Appellant also brought this counterclaim in her Countermotion for Sanctions.  See [Doc. 13, p. 8].  The Court's analysis as to the Countermotion for Offer of Final Settlement applies equally to the argument raised in the Countermotion for Sanctions.

reply brief on November 2, 2021.[11]  [Doc. 20].  The Court reviewed the reply and

considered the arguments therein in the disposition of Appellant's appeal.[12]  The

Motion for Extension is thus **GRANTED** *nunc pro tunc*.

Finally, Appellant filed a Motion to Vacate pursuant to Federal Rule of

Bankruptcy Procedure 9024 and Federal Rule of Civil Procedure 60(b).  [Doc. 21].

Rule 9024 provides that Rule 60 "applies in cases under the [Bankruptcy] Code."

Fed. R. Bankr. P. 9024.  In turn, Rule 60(b) of the Federal Rules of Civil Procedure

allows a court to "relieve a party . . . from a final judgment, order, or proceeding"

in certain circumstances.[13]  Fed. R. Civ. P. 60(b).  This rule "vest[s] the district

---

[11] Appellee filed a response to the appellate brief on October 6, 2021.  [Doc. 14].
Appellant's reply was thus due fourteen days later, on October 20, 2021.  See N.D. Ga.
Civ. R. 7.1(C).  Further, the Motion for Extension, filed on October 27, 2021, was itself
untimely.  This Court requires litigants to file any motions for extension of time prior to
the expiration of the applicable deadline.  See Standing Order Regarding Civil Litigation
for Cases Proceeding Before the Honorable J. P. Boulee.  Appellant, despite being *pro se*,
was required to comply with these rules.  See Maus v. Ennis, 513 F. App'x 872, 878
(11th Cir. 2013).

[12] The Court notes that the reply brief contains principally new arguments, namely fifteen
reasons that Appellee supposedly lacks standing.  Appellant did not raise any of these
arguments in her initial brief, and the Court need not consider them now.  See
Tallahassee Mem'l Reg'l Med. Ctr. v. Bowen, 815 F.2d 1435, 1446 n.16 (11th Cir. 1987)
("It is well settled that a party cannot argue an issue in its reply brief that was not
preserved in its initial brief.").

[13] In the Motion to Vacate, Appellant does not specify under which subsection of Rule
60(b) she seeks relief.  The Court will thus analyze her claims under "the catchall
provision of the Rule, [which] authorizes relief for 'any other reason justifying relief
from the operation of the judgment.'"  Cano v. Baker, 435 F.3d 1337, 1342 (11th Cir.
2006) (quoting Fed. R. Civ. P. 60(b)(6)).

courts with the power 'to vacate judgments whenever such action is appropriate to accomplish justice." <u>Griffin v. Swim-Tech Corp.</u>, 722 F.2d 677, 680 (11th Cir. 1984) (quoting <u>Klapprott v. United States</u>, 335 U.S. 601, 615 (1949)).  However, relief under Rule 60(b) "is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances." <u>Id.</u>  The party moving for relief under Rule 60(b) bears "the burden of showing that absent such relief, an 'extreme' and 'unexpected' hardship will result." <u>Id.</u> (quoting <u>United States v. Swift & Co.</u>, 286 U.S. 106, 119 (1932)).  As detailed below, the Court concludes that Appellant failed to meet this burden.

Appellant presents two discernable arguments to support the Motion to Vacate.  First, she repeats the allegations set forth in other filings that the designation of Appellee's name in this case differs from how that name appeared in prior correspondence.  Appellant thus contends that the Georgia Bankruptcy Court's prior orders should be vacated because they list "an Improper Party as having been granted the relief in question." [Doc. 21, p. 2].  The Court addressed a similar claim by Appellant in its earlier analysis of her appeal and found this position to be untenable.  <u>See</u> <u>supra</u> Part II.B.  That analysis applies here.  The Court declines to vacate any court orders based on a minor variation in the appearance of Appellee's name in this case.

Second, Appellant raises a variety of due process claims.  She contends that the virtual format of hearings conducted by the Georgia Bankruptcy Court abridged the due process rights of her husband and of an unnamed witness because that format failed to accommodate their respective unspecified disabilities.  She also argues she could have more easily impeached Appellee's witness had the June 6, 2021 hearing been held in person.  Appellant supported none of these contentions with specific facts or citations to legal authority.  For example, she does not explain how, why or in what manner cross-examining a witness by videoconference differs so significantly from cross-examining a witness in person that the former somehow constitutes a due process violation.[14]  Appellant claims that her witness did not receive accommodations for a disability during the virtual hearing—but she does not name the witness, describe the alleged disability in any detail or state why a virtual hearing was inadequate.  Appellant's conclusory assertions do not establish a violation of due process, let alone grounds for relief under Rule 60(b).

Next, Appellant claims that she was "denied the right" to cross-examine an individual from the Bank of New York Mellon in violation of her right to due

---

[14] The Court also notes that at the time of this hearing—June 6, 2021, well within the COVID-19 pandemic—virtual proceedings were largely the norm.

process.  [Doc. 21, p. 4].  Appellant does not state who denied her this purported right or how this alleged denial deprived her of due process.  Without these facts, Appellant's assertions do not show the "exceptional circumstances" that are required for Rule 60(b) relief.  <u>Griffin</u>, 722 F.2d at 680.

Finally, Appellant argues that the Georgia Bankruptcy Court failed to issue Appellant's requested subpoenas, which represented "another denial of [her] right of due process of law."  [Doc. 21, p. 6].  Although Appellant did not provide the Court with any of these details, it appears from the record that the Georgia Bankruptcy Court orally granted Appellee's motion to quash subpoena on November 20, 2019, [Doc. 10-20, p. 45], and again by written order on December 4, 2019, [Doc. 10-15, p. 1].  Once more, Appellant does not explain how quashing a subpoena violates due process, let alone why vacating that order—now over a year and a half old—is necessary to prevent extreme and unexpected hardship. Appellant's Motion to Vacate is therefore **DENIED**.

## CONCLUSION

For the reasons stated above, the Georgia Bankruptcy Court's Order on Remand Granting Motion for Prospective Relief from Stay Pursuant to 11 U.S.C § 362(d)(4) is **AFFIRMED**.  Appellee's Motion for Sanctions and Attorney's Fees and Costs as Damages for Appellant's Frivolous Appeal [Doc. 6] is **DENIED AS**

**MOOT**.  Appellee's Amended Motion for Sanctions and Attorney's Fees and Costs as Damages for Appellant's Frivolous Appeal [Doc. 7] is **GRANTED**. Appellee is **ORDERED** to submit, within twenty-one days of this Order, documentation of the attorney's fees and costs incurred in the instant appeal.  Any response shall be filed no later than fourteen days after the documentation is filed. Such response shall be limited to addressing only the reasonableness of the attorney's fees and costs; any other arguments will not be considered by the Court.

Finally, Appellant's Motion for Extension [Doc. 18] is **GRANTED** *nunc pro tunc*.  Appellant's Countermotion for Sanctions [Doc. 13], Countermotion for Offer of Final Settlement [Doc. 16] and Motion to Vacate [Doc. 21] are **DENIED**. The Clerk is **DIRECTED** to close the case.

**SO ORDERED** this 29th day of July, 2022.

_____
**J. P. BOULEE**
United States District Judge